REICHEL *v.* SCHNEIDER & BROWN LUMBER CO.

1. EVIDENCE—WHEN STATEMENTS BY OWNER ADMISSIBLE AS AD-
MISSIONS AGAINST SUCCESSOR IN TITLE.

Statements of relevant facts made by persons owning real
or personal property, made during the continuance of
ownership, are available as admissions against a successor
in title, when the latter is a party to litigation concern-
ing the property, but as to personal property, declarations
of a vendor after the sale and possession has passed, are
inadmissible to affect the sale.

2. SAME—ADMISSIONS NOT ADMISSIBLE TO ESTABLISH FACT TAKING
PLACE THEREAFTER.

A release or bill of sale of logs given by the vendor after
he had transferred his equitable interest therein and
parted with possession, is inadmissible as an admission
of the owner, available against successors in title to estab-
lish the fact, which took place thereafter, that the logs
were end-marked with a certain initial.

3. SAME—ADMISSIONS BY SILENCE—FAILURE TO PROTEST.

Failure to protest when notice of mortgage sale of logs
reciting that they were end-marked "J" was served on
plaintiffs may not be treated as an admission of its correct-
ness, there being no call for them to protest to the officer,
and therefore there was no error in excluding said notice
of sale and the testimony of the officer as to its service.

4. CHATTEL MORTGAGES—CONSTRUCTION—PORTABLE STEAM BOILER
IN USE INCLUDED IN MORTGAGE.

Where a mortgage included not only a sawmill and all
the machinery, tools, equipment, and other personal
property, but also all machinery, tools, and equipment
added thereafter or "used in connection therewith," a
portable steam boiler attached by steam pipes and used
in connection with the sawmill, *held*, included in the
mortgage.

Error to Marquette; Flannigan (Richard C.), J.
Submitted October 16, 1923.   (Docket No. 65.)   De-
cided January 7, 1924.

Case by George Reichel and others against Schneider & Brown Lumber Company for the conversion of logs and other personal property.    Judgment for plaintiffs. Defendant brings error.    Affirmed, conditionally.

*Miller, Eldredge & Eldredge* (*W. T. Potter*, of counsel), for appellant.

*Sawyer & Sawyer,* for appellees.

McDONALD, J.    The plaintiffs were engaged in the logging and lumbering business on Dead river.    In the summer of 1910, they built a mill at a place known as Dead river pond.    Dead river empties into Lake Superior in the vicinity of the city of Marquette. They mortgaged the sawmill, together with the tools and equipments used therein, to one Edward S. Bice, representing the First National Bank of Marquette. This mortgage was foreclosed and a sale of the property covered by the mortgage was made.    The purchaser conveyed it to Schneider & Brown, copartners. Subsequently, the defendant, the Schneider & Brown Lumber Company, was incorporated and took over the property purchased by the partnership.    At the time of the foreclosure there was on the premises a blacksmith shop, in which were certain tools, equipment and material.    There was also, close by the mill, and attached to it by pipes, a portable steam boiler belonging to the plaintiffs.    The plaintiffs also claimed to have had a large quantity of logs which were sunk in the pond.    All of this property the plaintiffs say was not covered by the mortgage, but was taken over by the defendant corporation and converted to its use.    The purpose of this action is to recover the value of the property so converted.    The plaintiffs had a verdict for $13,466.69.    The defendant says that the judgment entered should be reversed because of error in the exclusion of certain testimony and in

charging the jury that the mortgage of the mill property did not cover the steam boiler.

During the time that they were operating the mill the plaintiffs purchased some timber land from one Louis Jensen under a contract which gave them immediate possession and permitted them to cut the timber into logs, which were to be end-marked "L. J.," and banked at Ash Siding. The contract provided that the title to the logs should remain in Jensen until the purchase price of $2,500 was fully paid. These logs were mortgaged by the plaintiffs to the First National Bank of Marquette. The bank secured a release of Jensen's interest, and subsequently foreclosed the mortgage. At the sale the logs were bought by the defendant. The plaintiffs acknowledge the defendant's ownership of these logs, but in the course of the trial offered evidence tending to show that defendant had sawed and converted other logs end-marked "J." To meet this claim the defendant sought to show that the "Ash Siding" logs which it had purchased at the sale were end-marked "J." For this purpose it offered in evidence the release or bill of sale from Jensen in which it was recited that the logs were so marked. The evidence was excluded and the defendant says that the ruling of the court in this regard constitutes reversible error.

It is claimed that the excluded instrument was admissible under the rule of evidence relating to declarations as to property by a predecessor in title. It is not contended that it was any part of the *res gestæ*. We do not deem it necessary to refer, except in a general way, to the many cases cited by the defendant in support of this contention. The history and evolution of the principle applied in these cases is interestingly told by Professor Wigmore in volume 2 of his work on Evidence, beginning with section 1080. It is also discussed by Justices GRAVES, CAMPBELL and COOLEY, in *Cook* v. *Knowles*, 38 Mich. 316. The rule

contended for by the defendant has now been quite generally adopted. The only question is whether it can be applied to the particular facts of the case under consideration. It is stated in 2 Chamberlayne's Modern Law of Evidence, § 1329, as follows:

"The general rule is that statements of relevant facts made by persons owning real or personal property, made during the continuance of ownership are available as admissions against a successor in title, when the latter is a party to a litigation concerning the property."

"As to personal property, there is an overwhelming weight of authority that declarations of a vendor after the sale and possession has passed, are inadmissible to affect the sale." 2 Jones on Evidence, § 245.

In the instant case the title to the Ash Siding logs was not in question. The only purpose in offering the excluded instrument was to show a declaration by the vendor as to how they were marked, a declaration made after he had parted with possession and had transferred an equitable interest in the logs to the plaintiffs. The contract provided that the plaintiffs should have immediate possession, but stipulated that when the timber was cut the logs should be marked "L. J." Whatever mark was put upon them was put there after Mr. Jensen, the vendor, had sold them to the plaintiffs and had given them possession. It matters not that Jensen retained the legal title as security for the payment of the purchase price. He had parted with possession and had transferred an interest. If he had been offered as a witness as to the mark on the logs, his testimony would not have been admissible unless it appeared that it was based on personal knowledge. It would have been rejected as hearsay. His declaration would come under the same rule unless he was the owner in possession at the time it was made. This exception to the hearsay rule of evidence is upon the theory that if he were in

possession he would be in a position to know the truth about it.    As is said in 2 Jones on Evidence, § 240, p. 379:

"The regard which one so situated would have to his interest is considered sufficient security against falsehood."

The declaration in question was made not only after the vendor had transferred the equitable title and parted with possession, but it was made of a fact which took place thereafter.    It was pure hearsay and was properly excluded.

Reference has been made to the fact that the Ash Siding logs were sold pursuant to the terms of a mortgage from the plaintiffs to the First National Bank of Marquette.    The notice of sale contained a recital that the logs were end-marked "J."    It was served upon the plaintiffs by a deputy sheriff.    The court excluded the notice of sale and the testimony of the officer as to its service.    The defendant says this was error.    The testimony was offered for the purpose of showing that the Ash Siding logs were end-marked "J.," evidently on the theory that the plaintiffs' silence when the notice of sale was served upon them should be treated as an admission of the truth of its recitals. Conceding that the plaintiffs knew the contents of the notice, there was no call for them to make any protest to the officer who served it.    Their failure to do so was not an admission that the property was correctly described in the notice.    The court did not err in excluding the testimony.

It is further claimed that the court erred in charging the jury that the mortgage of the mill property did not include the portable steam boiler.    The mortgage expressly included not only the sawmill and all the machinery, tools, equipment and other personal property therein contained, but also "all machinery, tools and equipment that shall hereafter, so long as the

notes hereby secured remain unpaid, be added to or placed in said sawmill building or used in connection therewith." It is undisputed that the boiler was attached to the building by steam pipes at the time of the sale, and was being used in connection therewith. We think the court erred in holding that as a matter of law it was not covered by the mortgage. As the only evidence of the value of the boiler was $122, the error can be cured by deducting that amount from the judgment.

The judgment is affirmed on condition that the plaintiffs file within twenty days a remittitur for $122. Neither party will have costs.

CLARK, C. J., and BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.